UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
MAR 15 12 58 PM '04
U.S. DISTRICT COURT
NEW HAVEN, CONN.

**John B. Crawley, for himself, Ann Crawley and Jean Crawley**

**v.**

**Oxford Health Plans, Inc.**

**No. 3:03cv734 (JBA)**

**Ruling on Motion to Remand to State Court for Lack of Subject Matter Jurisdiction or, Alternatively, for Leave to File An Amended Complaint [Doc. # 12]**

Plaintiff John Crawley, for himself, Ann Crawley and Jean Crawley (collectively "Crawley") commenced this suit against defendant Oxford Health Plans, Inc ("Oxford") in the Superior Court for the State of Connecticut, Judicial District of Stamford/Norwalk, on March 31, 2003, alleging that Oxford wrongfully terminated coverage for failure to pay a premium. On April 24, 2003, the defendant removed this case to federal court pursuant to 28 U.S.C. §1441(b) on the ground that plaintiffs' state law claim is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1462. Plaintiff's motion to remand [Doc. # 12] is now pending before the court. For the reasons discussed below, the motion to remand is granted.

## I. Background

Plaintiff John Crawley is a former employee of Times Mirror

Magazines ("Times Mirror"), where he participated in an ERISA-governed employee welfare benefit plan, receiving health insurance from Oxford Health Plans, Inc. See Complaint [Doc. # 1, Ex. 3] at ¶ 5. On June 26, 1999, Crawley terminated his employment with Times Mirror, and elected to receive "continuation coverage" under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161 et seq. See Declaration of Carolyn Walker [Doc. # 17] at ¶ 6. Following the termination of his COBRA coverage, Crawley applied for an individual conversion policy providing personal HMO health insurance coverage, as permitted under the terms of the ERISA plan. See id. at ¶¶ 7, 8. Crawley's application was accepted. Oxford Health Plans (N.Y.), Inc. ("Oxford-NY"), a subsidiary of Oxford, was authorized to issue the conversion policy to Crawley, a non-New York resident, under the terms of the ERISA group plan in which Crawley participated. See Declaration of Gail Kahl [Doc. # 18] at 12. Oxford has provided individual HMO coverage under the conversion policy to Crawley and his family since January 1, 2001. See id. at ¶ 7. Under this policy, Crawley's monthly premium payments were made directly to Oxford. See Complaint [Doc. # 1, Ex. C] at ¶ 7.

In his complaint, Crawley alleges that Oxford wrongfully terminated his coverage for failure to pay a premium in September 2002. He states that he transmitted checks to Oxford each month,

including in September 2002, that his premium checks from August and October 2002 were deposited by Oxford, and that Oxford paid covered claims on his behalf after August 2002. See id. at ¶¶ 7-11. According to Crawley, after initially informing him that his coverage would be reinstated upon payment of the asserted September arrearage, Oxford informed him that his insurance coverage was terminated effective August 31, 2002 and returned his October premium less the amount of the claims incurred after August 31, 2002. See id. at ¶¶ 12-19. Crawley subsequently brought suit in state court seeking reinstatement of his insurance coverage. Oxford removed this case to federal court on April 24, 2003, stating that this Court has jurisdiction under 28 U.S.C. § 1331 because Crawley's claims are preempted and governed exclusively by ERISA. See Notice of Removal [Doc. # 1] at ¶ 3.

## II. Discussion

At issue is whether ERISA preempts Crawley's claim that his conversion policy was wrongfully terminated and provides this Court with federal question jurisdiction. ERISA provides for a broad preemption of state law claims related to employee benefit plans. As the statute states, it "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Employee welfare benefit plans include "any plan, fund, or program which was

heretofore or is hereafter established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . benefits in the event of sickness, accident, disability, death or unemployment. . . ." 29 U.S.C. § 1002(1). Thus, claims to benefits under Crawley's conversion policy may be subject to ERISA preemption if the policy is deemed an employee welfare benefit plan, and if the claim sufficiently "relates to" this plan. See Demars v. Cigna Corp., 173 F.3d 443, 445 (1st Cir. 1999) ("The proper question to ask under § 1144(a) is not whether [plaintiff's] claims relate to her conversion policy, which relates in turn to an ERISA plan, but rather whether the conversion policy is itself subject to ERISA regulation as an ERISA plan.").

Crawley argues that his health insurance policy with Oxford involves an independent relationship between him and his insurer that is neither administered nor regulated by his former employer or an ERISA plan administrator, and that his policy thus cannot be deemed an employee welfare benefit plan. Oxford argues, however, that Crawley's conversion policy is a component of the employee benefit plan because it arose from his employment relationship with Times Mirror, and therefore has a "direct and immediate" relationship with the ERISA plan. Reply Memorandum in Further Support of Motion to Dismiss and in Opposition to

Plainitffs' Motion to remand [Doc. # 16] at 7. In particular, Oxford points to the facts of this case as illustrating the need for ERISA's application to conversion policies. As Oxford states, it issued the conversion policy to Crawley solely because it was required to do so under the terms of the ERISA plan, and that in the absence of the conversion benefits option in the ERISA plan in which Crawley participated as a Times Mirror employee, Oxford-NY would not be authorized to provide benefits to non-New York residents like Crawley. Because Crawley's conversion policy was terminated, Oxford argues that he is no longer eligible for participation in the conversion policy, and would have to reapply for individual coverage from Oxford-NY, which would be precluded from accepting him because of his residency. Thus, Oxford argues, the relief that Crawley seeks - a court order prospectively reinstating coverage - is inconsistent with the eligibility requirements established by the ERISA plan.

Crawley does not dispute that the conversion rights in the Times Mirror ERISA benefits plan allowed him to obtain an insurance policy with Oxford. But this case is not about the right to convert, which is well-settled as governed by ERISA. See Howard v. Gleason Corp., 901 F.2d 1154, 1158 (2d Cir. 1990). Rather, it is about the rights Crawley has under his conversion policy. "A converted policy is created when an ERISA plan

participant leaves the plan and obtains a new, separate individual policy based on conversion rights contained in the ERISA plan. The contract under the converted policy is directly between the insurer and insured." Waks v. Empire Blue Cross/Blue Shield, 263 F.3d 872, 876 (9th Cir. 2001).

"[T]he purpose of Congress is the ultimate touchstone" in determining whether ERISA preemption applies. Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 8 (1987) (citations and internal quotation marks omitted). As the Supreme Court recognized:

> ERISA's pre-emption provision was prompted by recognition that employers establishing and maintaining employee benefit plans are faced with the task of coordinating complex administrative activities. A patchwork scheme of regulation would introduce considerable inefficiencies in benefit program operation, which might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them. Pre-emption ensures that the administrative practices of a benefit plan will be governed by only a single set of regulations.

Id. at 11.

ERISA's preemption section, therefore, was meant to protect employers from the burdens of multiple and perhaps inconsistent state regulations, and employees from losing benefits because of such inefficiencies. Importantly, however, "Congress placed into ERISA an express disavowal of any intent to regulate insurers qua insurers." Demars, 173 F.3d at 446 (citing 29 U.S.C. §

1144(b)).[1]

Here, as with any conversion policy, Crawley's former employer no longer has any involvement in the administration of his health insurance plan. Once the conversion took place, Crawley paid his premiums directly to Oxford, and Oxford alone managed these funds and made the decision to terminate his policy. Crawley's converted policy, therefore, implicates none of the statutory purposes of ERISA. Moreover, because of the lack of employer involvement in a conversion policy, conversion policies are readily distinguishable from the "continuation coverage" provided to former employees under COBRA. "COBRA continuation coverage does place ongoing administrative burdens on the employer (since the ex-employee continues to belong to the employer's group plan), as well as ongoing financial obligations

---

[1] 29 U.S.C. § 1144(b)(2) provides as follows:
(A)  Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.
(B)  Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

(since COBRA coverage may in fact cost the employer more than the permitted reimbursement amount)."  Demars, 173 F.3d. at 447.  A conversion policy, by contrast, establishes a completely independent relationship between the individual and the insurer.  Such a policy cannot be deemed an ERISA plan.

While the circuits have split on this issue, the majority of courts considering this issue have reached the same conclusion.  See, e.g. Demars, 173 F.3d at 446 ("[A]n employee benefit may be considered a plan for purposes of ERISA only if it involves the undertaking of continuing administrative and financial obligations by the employer.") (citation and internal quotation marks omitted); Waks, 263 F.3d at 876 ("A converted policy . . . is independent of the ERISA plan and does not place any burdens on the plan administrator or the plan.  There are no relevant administrative actions by the employer."); Arancio v. Prudential Insurance Co., 247 F.Supp.2d 333, 336 (S.D.N.Y. 2002) ("Now that Arancio has exercised his conversion right, the policy he holds is the same as any other individual policy."). But see Painter v. Golden Rule Insurance Co., 121 F.3d 436, 439-440 (8th Cir. 1997) ("[T]he right to a Conversion Policy was part of the plan or program 'established' by M.D. Care to provide medical benefits for its current and former employees.  As such, the Conversion Policy is a component of M.D.Care's ERISA plan."); Glass v. United of Omaha Lfe Insurance Co., 33 F.3d 1341, (11th Cir. 1994)

(Plaintiff's "ability to obtain the converted life insurance policy arose from the ERISA plan, and the converted policy itself continued to be integrally linked with the ERISA plan" because it was a group policy for former employees).

The reasoning of those courts finding ERISA preemption is not persuasive, as these decisions conflate the right to convert with rights under an undisputedly converted insurance policy. These decisions, moreover, may be cabined by their facts. For example, despite the broad sweep of the language in Glass, the issue before the Court was in fact the conversion right itself, as the insurer moved to terminate coverage after belatedly learning that the individual had not been eligible at the time of conversion. See Glass, 33 F.3d at 1344.

Oxford has urged the application of ERISA to the facts of this case, because Crawley would not have been eligible for an individual policy with Oxford-NY without the conversion provision in his ERISA plan with his former employer. Oxford does not dispute, however, that Crawley was in fact eligible to convert to an individual policy. Since this conversion is now complete and the right to convert is not in question, these facts do not support application of ERISA. Oxford also argues that it would not be able to reinstate Crawley's coverage under the terms of the policy because Crawley is not a New York resident. Crawley's claim, however, is for wrongful termination of his policy, and he

seeks reinstatement under his earlier policy, not to apply anew for an individual health insurance policy.[2] Finally, Oxford expresses concern over the application of Connecticut law to Crawley's claim, instead of New York law, because his insurance policy was developed under the laws of New York and should not be expected to consider compliance with Connecticut statutory provisions. This too is not a basis for ERISA preemption, as Connecticut courts are fully capable of considering any conflict of laws concerns.

## III. Conclusion

For the foregoing reasons, plaintiff's Motion to Remand to State Court for Lack of Subject Matter Jurisdiction or, Alternatively, for Leave to File An Amended Complaint [Doc. # 12]

---

[2]Plaintiff's complaint cites, inter alia, Conn. Gen. Stat. § 38a-483(a)(4) as a basis for relief, which provides "If any renewal premium is not paid within the time granted the insured for payment, a subsequent acceptance of premium by the insurer or by any agent duly authorized by the insurer to accept such premium, without requiring in connection therewith an application for reinstatement, shall reinstate the policy; provided, if the insurer or such agent requires an application for reinstatement and issues a conditional receipt for the premium tendered, the policy shall be reinstated upon approval of such application by the insurer or, lacking such approval, upon the forty- fifth day following the date of such conditional receipt unless the insurer has previously notified the insured, in writing, of its disapproval of such application." This provision is clear about when a new application for reinstatement is required, and when it is not. Under this statute, Oxford would be allowed to disapprove an application for reinstatement.

is GRANTED. The Clerk is hereby directed to remand this case to the Superior Court for the State of Connecticut, Judicial District of Stamford/Norwalk.

IT IS SO ORDERED.

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut, this 11th day of March, 2004.